Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida 🔽

Civil Division

| | |
|---|---|
| ~~D.J.S~~ <br> *Plaintiff(s)* <br> *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* <br> -v- <br><br><br><br><br> The CSI Companies, Inc. <br> *Defendant(s)* <br> *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No. **3:25-cv-00703-WWB-PDB**
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑Yes ☐No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | D.J.S |
| Street Address | PO Box 521 |
| City and County | Margaret, St. Clair Co. |
| State and Zip Code | 35112 |
| Telephone Number | 904.330.4131 |
| E-mail Address | demarcussteward@yahoo.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | The CSI Companies, Inc. |
| Job or Title *(if known)* | Healthcare IT Staffing Firm |
| Street Address | 7720 Baymeadows Rd. E |
| City and County | Jacksonville, Duval County |
| State and Zip Code | Florida, 32256 |
| Telephone Number | (904) 338-9515 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | The CSI Companies, Inc. |
| Street Address | 7720 Baymeadows Rd. E |
| City and County | Jacksonville, Duval County |
| State and Zip Code | Florida, 32256 |
| Telephone Number | (904) 338-9515 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Other federal law *(specify the federal law)*:

☑    Relevant state law *(specify, if known)*:

FCRA - Title XLIV Chapter 760

☐    Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☑ Failure to hire me.
- ☑ Termination of my employment.
- ☐ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☐ Retaliation.
- ☐ Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

May 20th, 2024 - May 24th, 2025

C.    I believe that defendant(s) *(check one)*:

- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☑ race          Ethnicity - African American
- ☐ color         _____
- ☑ gender/sex    Male
- ☐ religion      _____
- ☐ national origin _____
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*

_____

E.    The facts of my case are as follows. Attach additional pages if needed.

Plaintiff: D.J.S

Defendant: The CSI Companies, Inc.

### E. Complaint

The facts of the case are as follows:

1. Plaintiff, D.J.S., is an African American male who employs as a Healthcare IT consultant.

2. Defendant, The CSI Companies, Inc., is a Healthcare IT staffing company specializing in fulfillment of various roles of employment in the healthcare industry.

3. In July of 2022, Plaintiff began seeking employment with the Defendant.

4. In July of 2022, the Defendant spoke with the Plaintiff through its recruitment department regarding employment opportunities.

5. In September of 2022, Plaintiff accepted an employment offer from The CSI Companies, Inc.; Plaintiff submitted its resume', interviewed, completed all compliance requirements, and onboarded with the Defendant as a Healthcare IT consultant.

6. In September of 2022, D.J.S. employed with Defendant on an assignment. Filling a position negotiated and agreed upon within the terms of the employment agreement, Plaintiff traveled to the worksite as agreed and completed his first contractual assignment with the Defendant as a Healthcare IT Consultant in October of 2022.

7. Prior to September of 2022, D.J.S had not employed with The CSI Companies, Inc. in any capacity; Specifically, as a Healthcare IT Consultant.

8. In December of 2022, The Defendant corresponded with the Plaintiff on multiple levels: Recruitment, Payroll, and Management. The Defendant's recruitment team continued to inform the Plaintiff of potential upcoming assignments; Payroll communicated regarding expense and payroll software and work process updates, and the Defendant's Management and the Plaintiff began to communicate regarding the Plaintiff's experiences with its company at that point in time.

9. Within those correspondences to the Defendant, Plaintiff communicated with a Departmental Lead responsible for receiving and addressing such type of communications; Plaintiff's concerns and thoughts regarding employment experiences with Defendant as a Healthcare IT Consultant at that time were communicated.

10. Within the Plaintiff's communications regarding the recent consulting experience with the Defendant, Plaintiff addressed his concerns regarding the lack of points of contact, absence of proper communication channels, and the Plaintiff's inability to communicate to the Defendant while employing with the Defendant on the Plaintiff's initial consulting assignment.

11. Defendant received Plaintiff's review and critique of the Plaintiff's consulting experiences in December of 2022

12. Thereafter Plaintiff's initial consulting contract with the Defendant in September of 2022, Plaintiff received communications regarding upcoming consulting opportunities that Defendant considered Plaintiff as recruitable or employable for in the months of November and December of 2022.

13. Plaintiff surveyed with the Defendant upon being communicated to by the Defendant via email regarding an upcoming consulting opportunity.

14. In completing the survey, Plaintiff declared himself available to receive and accept the specified contract opportunity with a specific client; where an actual contract offer was acknowledged as welcomed by the Plaintiff and potentially sent thereafter.

15. Plaintiff did not receive a contract for the "Advent Health" Healthcare IT Implementation (Go-Live) consulting opportunity in December of 2022 after surveying with the Defendant upon its request.

16. In January of 2023, the Defendant surveyed the Plaintiff's availability to contract and offered the Plaintiff a Healthcare IT Implementation Specialist consulting contract scheduled for March of 2023 with one of its many prime clients.

17. The Plaintiff accepted the Defendant's offer and attended the contract in March of 2023.

18. While in contract with the Defendant in March of 2023, Plaintiff encountered communication concerns reminiscent of those described herein. (No. 5 – No.10)

19. During the Plaintiff's second contract with the Defendant, Plaintiff was not provided the proper communication channel while employing on-site with the Defendant.

20. Specifically, the Defendant requires each contractor to establish a communication channel via cell phone through and within a specific mobile application that allows for direct and group communications while employing with the Defendant.

21. The Defendant strategically places each consultant in a specific group or "zone" based upon the consultant's scheduling assignment.

22. On this specific assignment, Plaintiff discovered upon being informed by a colleague that the Defendant was attempting contact the Plaintiff.

23. The Plaintiff did not receive a communication from the Defendant through the designated application as his colleague did.

24. Plaintiff, upon reviewing the Defendant's emails sent to Plaintiff, discovered that he was not sent the proper "zone" for his scheduled assignment upon arriving to the implementation project.

25. As result, Plaintiff was said to have been unavailable when communicated to by [a] "Zone Lead". (A role or position assigned to a contractor by the Defendant as part of the Defendant's hierarchical managerial structure)

26. After communicating with [a] "Zone Lead" and the Defendant's hiring manager / activation manager for the described position, Plaintiff was removed from his assignment.

27. Simultaneously, the Defendant's client, per communication from the Defendant, reduced staff on the specific assignment; A process in which the Defendant's prime client, per Defendant, elects a contractor, in this case the Plaintiff, as one of many contractors who are selected to be removed from the assignment due to the client's lack of necessity for resources. (Described as being "tapered" from [an] assignment or implementation)

28. Thereafter, the Defendant communicated via email to Plaintiff regarding [a] staffing need for its client "Emory Health" in March of 2023.

29. Plaintiff, in response, surveyed his availability to the Defendant, as requested, for the Defendant's specified client's implementation within the required timeframe to be considered for the Defendant's potential contract offer.

30. Plaintiff did not receive an offer for the "Emory Health" Healthcare IT Implementation (Go-Live) consulting opportunity in March of 2023 after surveying with the Defendant upon its request.

31. Plaintiff inquired with the Defendant regarding the specified contract in which the Defendant replied, "The final headcount ended up being ~150 and at this time, I do not have a spot for you."

32. At the time, the Defendant was recruiting for several "Go-Live" implementations; Specifically, "Munson Medical Center" and "RWJ Barnabas Health" (Implementations are staffed and employed on an at-will contractual basis)

33. In March - April of 2023, the Plaintiff, a few weeks after surveying with Defendant upon its request regarding his consulting availability for a Healthcare IT implementation with its prime client "Munson Medical", Plaintiff communicated directly with the Defendant as to whether he would be contracted with for the Defendant's employment contract assignment.

34. During the aforementioned timeframe, Plaintiff was not offered [the] Defendant's "survey" that determined [a] consultant's availability for [the] "RWJ Barnabas Health" implementation.

35. Plaintiff became aware through observation of Defendant's communications.

36. Upon Plaintiff's inquiry to the Defendant regarding the Plaintiff's lack of receipt of the Defendant's survey, Defendant, instead of providing an explanation, sent the Plaintiff a correspondence stating the Plaintiff was added to the consulting list as a "backup"; completely forgoing equal opportunity consideration for the specific contract.

37. Defendant, on April 18th, 2023, upon the Plaintiff's inquiry regarding the Defendant's "Munson Medical Center" employment opportunity employment designation, was told by the Defendant "I do not have an opening for you at this time. Will notify you should anything change." "Our headcount is ~130 consultants for that project so we have several hundred candidates who will not receive the contract for that project based on the limited amount of openings"

38. Defendant, on April 25th, 2023, in response to the Plaintiff's inquiry regarding the Defendant's "RWJ Barnabas Health" employment opportunity employment designation, was told by the Defendant, "I do not have any openings for you at RWJBH. I will let you know if anything changes." "For this project, we had 2,400+ consultants sign up but only had 1,400 openings for the project."

39. In June of 2023, Defendant surveyed and offered Plaintiff [an] employment contract with one of its many prime clients.

40. In October of 2023, Plaintiff completed the Defendant's contractual employment assignment.

41. In October of 2023, Defendant surveyed and offered Plaintiff [an] employment contract with one of its many prime clients.

42. In November of 2023, Plaintiff completed the Defendant's contractual employment assignment.

43. In April of 2024, Defendant surveyed the Plaintiff for availability and on Aprill 11th 2024 Defendant offered Plaintiff [an] employment contract with "Memorial Herman Medical".

44. Plaintiff accepted the Defendant's employment contract offer and attended the scheduled employment in May of 2024, specifically May 20th, 2024.

45. Before April and May of 2024, Plaintiff had not contracted with the Defendant for four and a half months, nor was the Plaintiff communicated to or with in any form regarding potential employment opportunities with any of the Defendant's many prime clients during the duration of the specified time.

46. In review, from July through September of 2022 until December of 2023, Plaintiff was communicated with, either in receipt of communication by Defendant or in Defendant's reply of communications from Plaintiff,

regarding nine individually specific contractual employment opportunities.

47. Out of the nine individual or specific "Go-Live" implementations or "waves" of implementations with a specific client of the Defendant that Plaintiff was made aware of throughout the defined timeframe, Plaintiff received proper communication from the Defendant in which the Plaintiff surveyed (communicated his availability) with the Defendant for seven of the nine known opportunities.

48. Out of nine opportunities that Plaintiff was made aware of, or, had become aware of, two of those scheduled contractual implementations were not presented to the Plaintiff via survey; one of which was brought to the Plaintiff's attention via telephone in the Defendant's attempts to, what seemed to be, fulfill a need at the last minute in November of 2022 ("Trinity Health"), and the other in April of 2023 ("RWJ Barnabas Health") was neither surveyed, mentioned directly to, nor properly communicated with the Plaintiff upon Plaintiff's attempt to inquire specifically regarding the employment opportunity itself as it relates directly to Plaintiff not being made aware of its' existence; not being surveyed for availability to employ with the specific client and the Defendant; subsequently, to not be potentially offered a contract; As

other Healthcare IT consultants had such opportunity to contract with the Defendant's specific client.

49. In review, Defendant was communicated to directly via e-mail, surveyed on interest and availability for, and sent a contract to employ with the Defendant a total of four of nine Healthcare IT consulting contract opportunities, seven of which Plaintiff was made aware of through [the] method described within this paragraph, one of which Plaintiff was undocumented and Plaintiff was informed via telephone, and one other of which Plaintiff became aware by observation of subject matter within his receipt of general communication from the Defendant; Throughout the defined timeframe of July 2022 through December 2023.

50. As mentioned in paragraph 43 and 44, Plaintiff accepted the Defendant's contract offer to employ as a Healthcare IT consultant with its staffing company in May of 2024 as an electronic healthcare record (EHR) subject matter expert (SME) at "Memorial Herrman Medical".

51. Plaintiff traveled to Houston, TX., oriented with the Defendant and its client "Memorial Herrman", and promptly arrived at the worksite as scheduled by the Defendant.

52. Plaintiff was scheduled to consult within a pediatric outpatient clinic located at 17903 West Lake Houston Parkway, Humble, Texas 77346 from May 22nd through May 25th of 2024 and May 28th through June 1st.

53. Prior to arriving at the work site on May 22nd, 2024, Plaintiff attended aforementioned orientation, as all contractors are required to attend.

54. There, the Plaintiff was introduced to the Defendant's assigned leadership for this specific implementation as well as other consultants employed with the Defendant that the Plaintiff would or could potentially encounter; either within a logistical carpool assignment or simply based upon hotel and clinic assignment.

55. As intended by the Defendant and expected by the Plaintiff, Plaintiff was directed to a specific location during the orientation to make the acquaintance of the Plaintiff's assigned "Team Lead".

56. The "Team Lead" is an individual responsible for a portion of the Defendant's managerial responsibilities throughout the implementation project; as the "Team Lead" role is specific to managerial tasks assigned or designated by the Defendant to an individual to support the managerial structure for the project or the project management's efforts within each implementation project.

57. For the first "wave" of this specific "Memorial Herrman" EHR "Go-Live", the Defendant designated fifteen individuals to this specific role.

58. Plaintiff was scheduled to the specific location mentioned in paragraph No. 52., thus assigned or scheduled to consult in referenced clinic and within its "zone"; in which one of the fifteen individuals who were pre-

assigned to "lead" a number of clinics in a specific "zone" by the Defendant would be considered the "Team Lead".

59. The individual assigned by the Defendant as "Team Lead" of [a] specific zone, [a] zone that consisted of a clinic that Plaintiff was scheduled to consult within, for the context of this Complaint will be referred to as "Mr. Walker".

60. Plaintiff spoke in person to "Mr. Walker" on May 21st, 2024, during the orientation.

61. During the brief conversation, Plaintiff addressed his carpool assignment and his communication channels.

62. "Mr. Walker" seemed coherent, aware, and in full understanding of what Plaintiff communicated to him during the orientation; as in person communication regarding carpool assignments and mobile contact information are in part what these types of orientations are designed to accomplish prior to beginning the scheduled assignment.

63. "Mr. Walker" was fiduciarily responsible for upholding and complying with specific instructions of the Defendant; Specifically, instructions that directly relate to communication to or from consultants during the course of contract.

64. On May 22nd, 2024, Plaintiff arrived at his scheduled worksite with his colleague and carpool driver, clocked in to the scheduled shift using the

required designated application, acknowledged his presence within the required group chat – text application, and begin the workday as contracted to do.

65. Plaintiff completed his shift at 5:15 PM as scheduled, entered the carpool vehicle with his colleague, and returned to the assigned lodging quarters.

66. Upon returning to the assigned hotel, Plaintiff began to check emails and phone calls in which he discovered that "Mr. Walker" texted and called him at his cell phone number during the scheduled shift.

67. Plaintiff immediately returned the attempts to contact him; both via text message and via phone call.

68. Mr. Walker did not respond to either of Plaintiff's phone calls or text messages when Plaintiff attempted to return his communications.

69. Plaintiff, throughout the entire shift, did not receive a "GroupMe" from "Mr. Walker" to his cellular device.

70. Plaintiff, throughout the entire shift, did not receive any form of communication from either of his colleagues informing him that the "Team Lead" was attempting to contact him.

71. Plaintiff, throughout the entire shift, had no inclination that the Defendant, in any capacity, attempted to communicate with him in any form until after his scheduled shift was completed.

72. Plaintiff, thereafter the first shift of his assignment, was neither contacted nor made contact with any employee of the Defendant regarding any matter.

73. The following day, May 23rd, 2024, Plaintiff arrived at his scheduled worksite with his colleague and carpool driver, clocked in to the scheduled shift using the required designated application, acknowledged his presence within the required group chat – text application, and begin the workday as contracted to do.

74. Plaintiff did not receive a direct communication via "Group Me" from "Mr. Walker" on May 23rd, 2024.

75. Plaintiff, while consulting at 17903 West Lake Houston Parkway, Humble, Texas 77346, was approached in perosn during clinic by "Mr.Walker".

76. Plaintiff, Prior to being approached by "Mr. Walker", witnessed "Mr.Walker" do the following: 1. Enter a Pediatric Clinic during operating hours abruptly and loudly, 2. Address contracted consultants and clinic staff directly with a loud tone aggressive tone., 3. Communicate with the clinic's office manager directly after entering the clinic in the described manner. 4. Walk toward Plaintiff holding a small laptop displaying stress and frustration.

77. Plaintiff, prior to witnessing "Mr.Walker" enter the clinic, heard the loud voice of "Mr.Walker's".

78. Plaintiff, prior to witnessing "Mr.Walker" enter the clinic, overheard colleagues – consultants discuss "Mr.Walker's" tone and demeanor within the "GroupMe" communication channels; as required to subscribe by the Defendant.

79. Furthermore, Prior to "Mr. Walker" entering 17903 West Lake Houston Parkway, Humble, Texas 77346, Pediatric Clinic, the environment was ideal for the circumstance.

80. The Defendant employed "Mr. Walker" and assigned "Mr.Walker" as "Team Lead" of "Zone 11" of 15 "zones".

81. Upon the Defendant's approach, Plaintiff observed and listened to the Defendant.

82. The Defendant began to communicate to Plaintiff while sustaining a similar tone and demeanor to what Plaintiff previously witnessed moments before throughout the clinic.

83. As "Memorial Herrman" outpatient clinic staff onlooked and overheard the entire situation; from the time "Mr.Walker" entered the clinic until that moment; Plaintiff begin to respond to the Defendant based upon Defendant's inquiry with the Plaintiff.

84. Plaintiff's tone and demeanor was calm, as the environment was calm and tranquil prior to "Mr. Walker" entering the clinic.

85. As Plaintiff responded to the Defendant, "Memorial Herrman" clinic staff member addressed "Mr. Walker", specifically stating that his volume was too loud and request that he carry-on his actions in another place.

86. Plaintiff observed the communication from the clinic staff, directed my visual attention to the Defendant's representative and awaited "Mr. Walker's" response.

87. "Mr. Walker" requested that the conversation be had in a place other than the clinic floor and attempted to imply that Plaintiff lead him to a place other than where Plaintiff was stationed before he entered the clinic.

88. A satellite lab was a few paces away, where "Mr. Walker" entered the satellite lab and Plaintiff accompanied the "Team Lead".

89. The "Team Lead", "Mr. Walker" began to ask Plaintiff: "Why he was unable to contact him via phone call to the cell phone number he had on file with the Defendant".

90. "Mr. Walker" the Defendant's "Team Lead", displayed stress and frustration.

91. The time of the day was around noon.

92. The Plaintiff stated to "Mr. Walker", "Why didn't you contact me via "GroupMe"? "

93. "Mr. Walker" replied, "I dont have time for all that"

94. Plaintiff began to tell "Mr. Walker" he did not have cell phone service in the clinic, he had an alternate phone number that could be used via wi-fi if needed while supporting the clinic, and that within a few minutes he could provide the alternate emergency contact phone number.

95. Before Plaintiff could assist "Mr. Walker" in his attempts, "Mr. Walker began to leave the clinic.

96. Before exiting the clinic, the Defendant's "Team Lead" stated to Plaintiff in a threatening manner that, due to what "Mr. Walker" perceived of Plaintiff, Plaintiff's contract would potentially end.

97. Plaintiff perceived "Mr.Walker" as threatening, as Plaintiff is sure the entire clinic perceived the Defendant's "Team Lead" as threatening.

98. Upon the Defendant's "Team Lead" exiting the clinic, Plaintiff entered the clinic manager's office to discuss what she – the office manager - perceived to had just transpired within her clinic.

99. After speaking with the clinic manager, Plaintiff was under the assumption that the office manager was somehow convinced or influenced to believe that the abrupt disruption that took place in her clinic prior to "Mr.Walker" approaching Plaintiff to inquiry about his previous attempt to communicate with Plaintiff was excusable.

100.   The Defendant's "Team Lead's" actions gave way for the Defendant to couple the perspective of the circumstance, and create the collateral damage narrative that, the Defendant's blatant verbal attack and threat upon the Plaintiff was incited by [a] response to the Defendant's verbal attack and threat to end employment by the Plaintiff.

101.   The Defendant, "Mr. Walker" and The CSI Companies, Inc., created a false narrative of the Plaintiff's response to the Defendant's acts as an offense; to justify terminating Plaintiff's employment early while softening the result of its' acts.

102.   The Defendant incubated a disruptive work environment, weaponized the disruption caused within the work environment, and used Plaintiff as its own collateral damage to the Defendant's own belligerent actions.

103.   The Defendant ask Plaintiff to leave the worksite and return to the assigned hotel.

104.   The Defendant did not make provisions for the Plaintiff to return to the hotel upon asking the Plaintiff to leave the worksite.

105.   The Defendant, upon communicating with the Plaintiff after the Plaintiff made provisions to leave the worksite as requested, directed the Plaintiff to contact Human Resources regarding the recent circumstance.

106.   Plaintiff immediately contacted Human Resources of The CSI Companies, Inc. ("HR").

107. Plaintiff verbally communicated to the "HR" regarding his recent experiences at the Pediatric Clinic.

108. "HR" stated that it would begin an "investigation" of the occurrence and contact Plaintiff upon the conclusion of its' investigation.

109. During that time, Plaintiff contacted "Executive Leadership" directly regarding the occurrences and explained what transpired.

110. "HR" followed up with the Plaintiff stating that the determination was made to remove the Plaintiff from the contract due to the response of the Plaintiff to "Mr. Walker", the Defendant's "Team Lead".

111. Plaintiff communicated to The CSI Companies, Inc.'s "HR" and "Executive Leadership" immediately with its perspective, opinion, and disapproval of the Defendant's response.

112. The CSI Companies, Inc.'s "HR" and "Executive Leadership" responded with its final decision to remove the Plaintiff from the contract.

113. Defendant did not properly investigate the occurance, did not seek to remedy the situation effectively, nor did the Defendant ask the Plaintiff what transpired before or after conducting its investigation.

114. Upon Plaintiff's request, Plaintiff filed a formal complaint with "HR".

115. The Defendant attempted to convince the Plaintiff to purchase a return flight and check out of the hotel without giving the Plaintiff adequate time to address the allegations the Defendant placed upon the Plaintiff.

116. Plaintiff demanded that the Defendant purchase the Plaintiff's return flight and provide adequate time to prepare to travel.

117. The Defendant purchased the return flight and afforded adequate time for the Plaintiff to prepare to leave the contracted assignment upon the Plaintiff's demand.

118. The Defendant neither made any attempts to reschedule the Plaintiff to a different "Team Lead", "Zone", nor hotel, carpool, and clinic site before ending the Plaintiff's employment.

119. The Defendant made no attempts to inquire with the Plaintiff regarding any facts of the matter regarding the occurrence at the worksite; occurrences that caused the Defendant to end the Plaintiff's employment contract.

120. The "Memorial Herrman Medical" "Go-Live" in May of 2024 was the first "wave" of several scheduled implementations to be conducted by the Defendant's prime client "Memorial Herrman Medical"

121. Prior to the Defendant's act of early termination and creating a disruptive work environment while employing with Plaintiff, Plaintiff had not employed with "Memorial Herrman Medical", either as a

consultant with The CSI Companies, Inc. or as a consultant contracting with another firm.

122. Thereafter leaving Houston, TX. in May of 2024, Plaintiff continued communication with the Defendant regarding the "Memorial Herrman Medical" "Go-Live" and the complaint filed with "HR".

123. The Defendant stated the following: It was unable to provide details of the discipline process of its "Team Lead", unable to provide company policy to support its inability to provide additional information of its company's potential discipline processes, it was unable to fulfill Plaintiff's request for additional Executive Leadership contacts to escalate the complaint filed on the instance for employee safety reasons, and as result the Defendant's prime client "Memorial Herrman Medical" would not employ the Plaintiff in the future due to the allegations deriving from Plaintiff being verbally threatened in the work environment, where Plaintiff's reputation suffered and Plaintiff suffered financially from the act of and results of the Defendant's verbal attacks, and was victimized in a disruptive work environment that the Defendant created; all in which were neglected and lead to Plaintiff's early termination.

124. The Defendant, in this instance, used and allowed "Mr. Walker", an African American Male, to attack the Plaintiff.

125. The Defendant, since Plaintiff began employing with the Defendant in September of 2022, has specifically abandoned, manipulated, or failed to properly utilize as required, the primarily designated form of communications ("GroupMe") while Plaintiff employed with the Defendant; Causing in several instances during Plaintiff's employment, the complete failure of or the lack of consistent communications to be the catalyst and/or stimulus cause of issues while Plaintiff was employed with the Defendant; all of which in some form lead to Plaintiff's employment being negatively affected.

126. In doing so, Defendant attempts to shield itself from ethnic or racial and gender causes of action as result of its attempts to attack the Plaintiff, while also, shielding itself from failure to hire causes of actions by periodically offering Plaintiff employment.

127. As of May of 2024, the Defendant has offered the Plaintiff a Healthcare IT consulting employment contract with one of its many prime clients.

128. To be exact, on May 9th, 2024, before the "Memorial Herrman" "Go-Live", the Defendant offered the Plaintiff a similar opportunity in the same capacity with one of its many prime clients.

129. The implementation was scheduled to begin in April of 2025, eleven months from the time of the contract offer.

130. The Plaintiff accepted the contractual offer.

131. In November of 2024, the Defendant restructured the contractual offer and presented a "re-offer" to the Plaintiff.

132. Plaintiff accepted the "re-offer" in November of 2024, in which the start date of the project remained for April of 2025.

133. The Defendant's client rescheduled the initial start date of the project, pushing the EHR Implimnetation back to November of 2025, a total of 16 months from the initial offer of the contract until its now scheduled start date.

134. Thus, Plaintiff has not contracted with the Defendant with any of its clients, particularly "Memorial Herrman", since May of 2024.

135. The Defendant has not communicated to the Plaintiff regarding any of its clients or scheduled implementations since May of 2024.

136. Plaintiff has communicated to the Defendant within the referenced timeframe, yet, has neither received a response nor received an inbound communication from the Defendant regarding surveys of Plaintiff's availability, contract offers, communications of potential future opportunities with any of its many prime clients, or communications of potential future opportunities with potential prime clients in the future.

137. Each employee of The CSI Companies, Inc. that the Plaintiff communicated with before and leading up to his first assignment

considers themselves or is generally considered to be "white" or "Caucasian"

138.  Each employee of The CSI Companies, Inc. that the Plaintiff communicated to regarding the Plaintiff's specific concerns after leaving the worksite who is responsible for addressing the Plaintiff's concerns, considers themselves or is considered "white" or "Caucasian" in ethnicity; race.

139.  Plaintiff was transparent in his intentions, clear and concise about his concerns for accountability regarding the early termination and failure to hire.

140.  The Defendant discriminated against the Plaintiff, to then justify its discrimination with allegations of the Plaintiff's "actions" by deeming his response as improper and procedurally inadequate.

141.  Each employee of The CSI Companies, Inc. that the Plaintiff communicated with, regarding pre-employment, is and considers themselves or is considered "white" or "Caucasian" in ethnicity; race.

142.  Each employee of The CSI Companies, Inc. that the Plaintiff communicated with, regarding new - hire, considers themselves or is considered "white" or "Caucasian" in ethnicity; race.

143.  Each employee of The CSI Companies, Inc. that the Plaintiff has communicated with about his experiences of, with, or from an

administrative level, considers themselves or is considered "white" or "Caucasian" in ethnicity or race.

144. The Defendant's discriminatory actions directed toward and projected upon the Plaintiff are acts of manipulation and hierarchical insubordination that derive from racial bias.

145. The Defendant's actions have prevented the Plaintiff's employment; displaying failure to hire.

## COUNT I

### Title VII – Discrimination on the Basis of Race

146. D.J.S realleges the foregoing paragraphs 1-145 as though fully set forth herein.

147. D.J.S is a member of a protected class on the basis of race.

    a. He is an African American man

148. D.J.S performed his role in a manner that is consistent with the business expectations of the Defendant.

149. The CSI Companies, Inc. has discriminated against D.J.S on the basis of race or ethnicity, as described herein, subsequently terminating his employment early and failing to hire him thereafter as a biproduct of premeditated, retaliatory acts purported by false narratives under false

pretenses while cultivating and reinforcing negative racial stereotypes; displaying isolated racial biases while incubating a disruptive work environment; disguising self-inflicted issues that are forged, weaponized, and then used as an emasculation tactic against the Plaintiff.

## COUNT II

### Title VII – Discrimination on the Basis of Gender

150. D.J.S realleges the foregoing paragraphs 1- 145 as though fully set forth herein.

151. D.J.S is a member of a protected class on the basis of gender.

   a. He is an African American man

152. D.J.S performed his role in a manner that is consistent with the business expectations of the Defendant.

153. The CSI Companies, Inc. has discriminated against D.J.S on the basis of gender, as described herein, subsequently terminating his employment early and failing to hire him thereafter as a biproduct of premeditated, retaliatory actions purported by false narratives and false pretenses while cultivating and reinforcing negative stereotypes; displaying isolated gender biases while incubating a disruptive work environment; disguising

self-inflicted issues that are forged, weaponized, and then used as an emasculation tactic against the Plaintiff.

## COUNT III

### Early Termination

154. D.J.S realleges the foregoing paragraphs 1-145 as though fully set forth herein.

155. D.J.S is a member of a protected class on the basis of gender.

    b. He is an African American man

156. D.J.S performed his role in a manner that is consistent with the business expectations of the Defendant.

157. The CSI Companies, Inc. has committed the act of early termination of employment against D.J.S. as the result of premeditated, retaliatory acts of the Defendant purported by false narratives under false pretenses while not taking the proper recourse to investigate, remedy, or resolve the issue which led to the Plaintiff's termination of employment.

## COUNT IV

### Failure to Hire

158. D.J.S realleges the foregoing paragraphs 1-145 as though fully set forth herein.

159.   D.J.S is a member of a protected class on the basis of race and gender.

a.  He is an African American man

160.   D.J.S performed his role in a manner that is consistent with the business expectations of the Defendant.

161.   The CSI Companies, Inc. failed to hire the D.J.S, as described herein, as a result of premeditated, restrictive discriminatory acts of the Defendant purported by false narratives under false pretenses in attempts to proport its recent self-inflicted emasculation tactic.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See Additional Document(s) Attached

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

March 21st 2025

B.      The Equal Employment Opportunity Commission *(check one)*:

☐      has not issued a Notice of Right to Sue letter.

☑      issued a Notice of Right to Sue letter, which I received on *(date)*   03/24/2025   .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐      60 days or more have elapsed.

☐      less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Plaintiff: D.J.S

Defendant: The CSI Companies, Inc.

V. Relief

1. Enter Judgement in favor of Plaintiff and against the Defendant for violation of Plaintiff's Rights under Title VII of the Civil Rights Act of 1964 and FCRA - Title XLIV Chapter 760.

2. Declare the actions of the Defendant unlawful discrimination.

3. Award Plaintiff compensatory damages for race and gender discrimination in a way that reasonably compensates Plaintiff of his losses, including loss of wages.

4. Award actual damages suffered from a disruptive work environment.

5. Award actual damages suffered from the failure to hire.

6. Award court costs and any potential attorney fees.

7. Grant all applicable relief the Court deems as necessary and appropriate.

A. Plaintiff seeks monetary damages for being discriminated against based upon his race and gender, suffering from early termination, and failure to hire thereafter. Plaintiff suffered from discrimination by not having equal opportunity to employ or seek employment in positions that were available to others whom were equally or less qualified; employment opportunities the Plaintiff specifically sought through the proper channels in which the Plaintiff has exemplified himself as qualified to fulfill; supported with over 10 plus years of experience.

B. The employment opportunities Plaintiff wasn't given equal opportunity to employ pays $3200 - $7000 bi-weekly for hours worked and $560 - $700 bi-weekly for per diem.

C. Plaintiff has consistently employed with various companies similar to the Defendant within the described industry, where through the experiences described herein, the facts presented in this complaint, and then discovery, plaintiff brings factual demands for relief from damages totaling approximately $70,000; considering all potential earnings from the time in which the defendant denied the plaintiff equal opportunity of employment until this complaint was filed.

D. The damages are calculated based upon the plaintiff's experience, the amount of employment opportunities offered by the defendant for the specifically applied for position throughout the defined timeframe, factored

by the likelihood of the plaintiff securing and fulfilling the denied employment.

E. The relief sought is supported by the Plaintiff's proven consistency of securing the applied for position, Plaintiff's market value in the specific role applied for, and Plaintiff's proven ability to successfully complete each assignment after being hired for the specific role; with firm consideration for the competitive factors of the specific position, the Defendant's competition with its competitors in securing the plaintiff's employment or individuals with equal or more experience than the Plaintiff, and factors such as uncontrollable circumstances i.e. natural disasters and force majeure circumstances which could potentially prevent an employer from employing anyone through the defined timeframe.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See Additional Document(s) Attached

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    06/15/2025

Signature of Plaintiff    /s/ Demarcus Steward    *Demarcus Steward*

Printed Name of Plaintiff    Demarcus Steward

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address